OSAGE OIL & REFINING CO. v. CONTI-
NENTAL OIL CO. et al. *

SAME v. KENNAMER, Judge.

Circuit Court of Appeals, Tenth Circuit.
September 14, 1929.

Nos. 124, 125.

J. E. Whitehead, of Dallas, Tex., for pe-
titioner.

Ray S. Fellows, of Tulsa, Okl., and Rob-
ert D. Hawley and Robert F. Armstrong,
both of Denver, Colo., for respondents.

Before LEWIS, PHILLIPS, and Mc-
DERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge. On Febru-
ary 25, 1927, the Osage Oil and Refining
Company commenced an action in the United
States District Court for the Northern Dis-
trict of Oklahoma against Mamie Axelrod,
Herman Axelrod, H. O. Dixon, J. R. Hos-
kins, Continental Oil Company, Exchange
National Bank of Tulsa, and the First Na-
tional Bank in Bartlesville to quiet title to
an oil and gas lease from the Osage Tribe of
Indians to the Osage Company. On April
29, 1927, a decree was entered in favor of
the Osage Company. The cause was taken
on appeal to the Circuit Court of Appeals
for the Eighth Circuit and, on November 8,
1928, the decree was affirmed in the case of
Axelrod v. Osage Oil & Refining Company
and Continental Oil Company v. Osage Oil
& Refining Company, reported in 29 F.(2d)

*Rehearing denied October 30, 1929.

712, where the facts and the substance of the decree are fully set forth. The mandate was duly filed on January 16, 1929, in the office of the clerk of the United States District Court, Northern District of Oklahoma. A motion to modify such decree was filed by the Continental Company, in the suit to quiet title, on February 2, 1929. This motion set out that, on January 29, 1929, the Osage Company delivered to the Continental Company assignments on departmental forms purporting to transfer to the Continental Company a one-half interest in and to such oil lease; that such assignments had been returned to the Osage Company on account of certain defects therein; that the Osage Company had not furnished a release of a certain mortgage from it to the Interstate Pipe Company on such lease; that the Osage Company had not furnished an abstract showing it to be the record owner of a valid title to such lease free and clear of all liens and incumbrances; that, on December 22, 1928, notice was issued by the superintendent of the Osage Nation to the Continental Company stating that such lease had terminated as of October 31, 1928, on account of the failure to produce oil therefrom in paying quantities; that such lease was given for a term of five years from August 27, 1918—the date of its approval by the Secretary of the Interior—and so long thereafter as oil should be found in paying quantities; that such 5-year term had expired August 27, 1923; that no oil well had been operated upon such lease after the month of April, 1927; that, by reason of the cessation in operating such lease and the failure to produce oil in paying quantities after April, 1927, such lease had terminated, according to its terms; that the decree of April 29, 1927, required the Osage Company to deliver to the Continental Company perfect title to a one-half interest in such lease within 30 days after such decree became a finality; that such 30-day period commenced to run on January 16, 1929; and that such lease was of no force or effect, and had not been for more than 20 months immediately prior to February 2, 1929. It prayed that, by reason of the termination of such lease and the other reasons mentioned in such motion, such decree be modified so as to relieve the Continental Company from the obligation to purchase from the Osage Company any interest in such lease and the clerk of the court be directed to deliver to the Continental Company the sum of $50,000 deposited with him pursuant to such decree.

On March 29, 1929, the Osage Company filed a response to such motion. This response set up that, at the trial of the suit to quiet title, the Osage Company tendered to the Continental Company assignments of such lease on the forms prescribed by the Department of the Interior, and, upon the refusal of the Continental Company to accept the same, tendered them into court and delivered them to the clerk of the court; that the Continental Company has steadfastly and at all times since refused to accept such assignments or to accept possession of the property; that, within 30 days after the filing of the mandate, the Osage Company executed and delivered to the Continental Company another assignment in quadruplicate upon the forms prescribed by the Department of the Interior and offered all assistance it could render in attempting to secure the approval thereof by the Secretary of the Interior; that the Continental Company refused to accept such assignments and refused to sign an application to the Secretary of the Interior for the approval thereof; that, on February 2, 1929, the Osage Company executed a third assignment in quadruplicate and delivered it to the Osage Indian Agency to be transmitted to the Secretary of the Interior for approval and filed with the Indian Agency a written application reciting such decree; that the same was transmitted to the Secretary of the Interior; that the Osage Company was endeavoring to secure approval thereof by the Secretary of the Interior; that the Continental Company, through its attorney, was resisting the approval thereof by the Secretary of the Interior; that the Osage Company had paid off and discharged the liens existing upon such leasehold estate and had tendered full, clear and complete title to the Continental Company of an undivided one-half interest therein; that the lease had not been and could not be forfeited for failure to produce oil therefrom in paying quantities because of the unwarranted interference of the Osage Indian Tribe and the Secretary of the Interior in dispossessing the Osage Company and putting Mamie Axelrod and others in possession of such lease under the void sheriff's sale, thereby making it impossible for the Osage Company to carry out the terms and conditions of such lease; that no notice of election to forfeit ever has been given to the Osage Company and that no attempt has been made to forfeit such lease as against the Osage Company.

At the hearing on the motion, the Osage Company contended that such decree, upon

the affirmance thereof, became the judgment of the Circuit Court of Appeals for the Eighth Circuit, and that the United States District Court, Northern District of Oklahoma, was without jurisdiction to modify such decree, and that the issues, which the Continental Company sought to tender by its motion to modify, could be tendered only by a supplemental bill or by a bill of review.

On June 24, 1929, after a hearing, the court entered a further decree in the suit to quiet title. The court found that the Osage Company had not tendered to the Continental Company, within the 30-day period after the decree became final, evidence showing that the Osage Company had valid title to the lease, and that the lease had terminated prior to such 30-day period through failure of the lessee to produce oil therefrom in paying quantities. This decree, in part, reads as follows:

"It is, therefore, hereby ordered and decreed, that the journal entry or decree of this court in this cause dated April 29th, 1927, be and the same is hereby modified as follows:

"The clerk of this court is hereby directed forthwith to pay over to the Continental Oil Company the entire sum of fifty thousand dollars ($50,000.00) deposited with him in this cause, free of any claims whatsoever thereon by plaintiff.

"The Continental Oil Company is hereby barred of any right, title or interest in and to the oil lease involved in this action, and is hereby restrained from hereafter asserting any right, title or interest therein.

"The Continental Oil Company is hereby relieved of any and all liability of any kind whatsoever to plaintiff herein, and is discharged herefrom free of any costs."

An analysis of this order shows that the trial court substantially modified the decree of the appellate court in at least five particulars: First, it released the Continental Company of its obligation to accept the assignments tendered into court and to make an honest effort to secure their approval by the secretary of the interior; second, it held that the petitioner did not have valid title to the lease; third, it decreed that the petitioner was obliged to furnish an abstract of title and had failed to do so; fourth, it decreed that the assignments were not in proper form, notwithstanding the decree of the appellate court that they were in proper form; fifth, it adjudged the entire cost of the action against the petitioner.

Thereafter, on June 26, 1929, the Osage Company filed in this court its petition for a writ of prohibition against the Hon. F. E. Kennamer, District Judge of the United States Court for the Northern District of Oklahoma, seeking to prohibit him from taking further action in the proceeding looking to the vacation, modification or construction of such decree of April 29, 1927, as affirmed by the Circuit Court of Appeals for the Eighth Circuit; and its petition for a writ of mandamus requiring and compelling the Continental Company to accept an assignment of such oil and gas lease, as required by such decree, and to indorse acceptance of such assignment and present the same to the Secretary of the Interior for approval under the rules and regulations prescribed by the Department of Interior and to otherwise comply with such decree; and, in the alternative, that this court require the United States District Court for the Northern District of Oklahoma to enter judgment upon such mandate and to enforce the same.

Responses have been filed by the Continental Company and the Hon. F. E. Kennamer, Judge, and the matters have been briefed and submitted.

Counsel for the Continental Company contend: (1) That mandamus and prohibition lie in Circuit Courts of Appeal only to protect their appellate jurisdiction and not in lieu thereof, and prohibition will not issue to restrain the entry of an appealable order; (2) that the United States District Court for the Northern District of Oklahoma, by its decree of April 29, 1927, by implication reserved jurisdiction to determine the issues tendered by the motion to modify; (3) that the motion to modify should be taken and considered as a supplemental bill and the response of the Osage Company as an answer; (4) that the motion, although styled a "Motion to Modify the Decree," was in fact a motion to carry out one of the alternative provisions of the decree.

In Re Sanford Fork & Tool Co., 160 U. S. 247, 16 S. Ct. 291, 293, 40 L. Ed. 414, the court said:

"If the circuit court mistakes or misconstrues the decree of this court, and does not give full effect to the mandate, its action may be controlled, either upon a new appeal (if involving a sufficient amount) or by a writ of mandamus to execute the mandate of this court. Perkins v. Fourniquet, 14 How. 313, 330 [14 L. Ed. 435]; In re Washington, etc., R., 140 U. S. 91, 11 S. Ct. R. 673 [35 L. Ed. 339]; City Bank v. Hunter, 152 U. S. 512, 14 S. Ct. 675 [38 L. Ed. 534]; City Bank, Petitioner, 153 U. S. 246, 14 S. Ct. 804 [38 L. Ed. 705]. * * * The opinion de-

588

livered by this court, at the time of rendering its decree, may be consulted to ascertain what was intended by its mandate; and, either upon an application for a writ of mandamus, or upon a new appeal, it is for this court to construe its own mandate, and to act accordingly."

And in Ex parte Union Steamboat Co., on petition for a writ of mandamus, 178 U. S. 319, 20 S. Ct. 904, 905, 44 L. Ed. 1085, the court said:

"'If the special mandate, directed by the 24th section (of the judiciary act), is not obeyed or executed, then the general power given to "all the courts of the United States to issue any writs which are necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law," by the 14th section of the judiciary act, fairly arises, and a mandamus or other appropriate writs will go,' although an appeal will also sometimes lie. Perkins v. Fourniquet, 14 How. 328, 330, 14 L. Ed. 441, 442; Milwaukee & M. R. Co. v. Soutter, 2 Wall. 440, 443, 17 L. Ed. 860, 861. See also Boyce's Executors v. Grundy, 9 Pet. 275, 9 L. Ed. 127; Ex parte Dubuque & P. R. Co., 1 Wall. 69, sub nom. Dubuque Co. v. Litchfield, 17 L. Ed. 514; Durant v. Essex Co., 101 U. S. 555, 25 L. Ed. 961; Re Washington & G. R. Co., 140 U. S. 91, 35 L. Ed. 339, 11 S. Ct. 673; City Bank v. Hunter, 152 U. S. 512, 38 L. Ed. 534, 14 S. Ct. 675; Re City National Bank, 153 U. S. 246, 38 L. Ed. 705, 14 S. Ct. 804; Re Sanford Fork & Tool Co., 160 U. S. 247, 40 L. Ed. 414, 16 S. Ct. 291; Re Potts, 166 U. S. 263, sub nom. In re C. & A. Potts & Co., 41 L. Ed. 994, 17 S. Ct. 520."

If an appeal is the proper orderly method of securing a review, mandamus or prohibition will not lie. On the other hand, if mandamus or prohibition are proper, the fact that the error might be corrected by an appeal is not an answer. If a trial court's refusal to obey the mandate of an appellate court could not be raised by summary process, it would be within the power of the trial court to force repeated appeals and in effect nullify the action of the appellate court.

We conclude that, under the facts here presented, the remedies sought are proper. The decree in the suit to quiet title was in effect a contract of sale between the Osage Company and the Continental Company. It adjudged that the Osage Company should do certain things with reference to its title to the oil lease. The motion to modify the decree set up that the Osage Company had failed to perform the things enjoined upon it by such decree and whether the Osage Company had complied with the decree in respect to such matters were the questions which such motion sought to present for determination. Such questions were not within the issues made in the suit to quiet title. They pertained to events which occurred subsequently to the decree. Issues not raised by the pleadings cannot be determined. United States v. Goldstein (C. C. A. 8) 271 F. 838, 845. A decree, in so far as it undertakes to decide issues not made by the pleadings, is void. Jorgenson Co. v. Rapp (C. C. A. 9), 157 F. 732, 738, 739; Reynolds v. Stockton, 140 U. S. 254, 266, 270, 11 S. Ct. 773, 35 L. Ed. 464; Belford v. Woodward, 158 Ill. 122, 41 N. E. 1097, 1100, 29 L. R. A. 593. A court is without jurisdiction to pass upon questions not submitted to it for decision. McFadden v. Ross, 108 Ind. 512, 8 N. E. 161; Munday v. Vail, 34 N. J. Law, 418, 422–3; Gille v. Emmons, 58 Kan. 118, 48 P. 569, 570–1, 62 Am. St. Rep. 609; 33 C. J. p. 1152, § 93. If the court were without jurisdiction to determine such issues at the original trial, it would seem to follow that it was without jurisdiction to reserve such issues for future determination.

Because of the interference by the Secretary of the Interior in recognizing and approving the assignments from the Sheriff of Osage County to Mamie Axelrod and from Mamie Axelrod to the Continental Company, it is doubtful if the Osage Indian Tribe and the Secretary of the Interior are in a position to insist that the lease terminated by reason of the failure of the Osage Company to continue the production of oil therefrom in paying quantities (Transcontinental Oil Co. v. Thomas, C. C. A. 5, 29 F.(2d) 733), and we think it probable that, if proper assignments from the Osage Company to the Continental Company, duly accepted by the latter, are tendered to the Secretary of the Interior, he will recognize the lease as in force and effect and approve such assignments.

The motion set up that the lease had terminated by reason of events which occurred subsequently to the decree. Where, by reason of events occurring subsequently to the decree, the further aid of the court is necessary to settle the rights of the parties and carry out the decree, a supplemental bill should be filed asking for an adjudication of the new issues and a decree to enforce the original decree. Root v. Woolworth, 150 U. S. 401, 14 S. Ct. 136, 138, 37 L. Ed. 1123; Lang v. Choctaw O. & G. R. Co. (C. C. A. 8), 160 F. 355, 360; Cyc. of Fed. Pro., vol. 4, § 1157.

In Root v. Woolworth, supra, the court

quoted from Story's Equity Pleading (9th Ed.) § 338, as follows:

"A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution, or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defense made to it. * * * But, where a supplemental bill is brought in aid of a decree, it is merely to carry out, and to give fuller effect to, that decree, and not to obtain relief of a different kind on a different principle; the latter being the province of a supplementary bill in the nature of a bill of review, which cannot be filed without the leave of the court."

In Lang v. Choctaw, etc., supra, the court said:

"A bill in equity dependent upon a former suit in the same court may be maintained by the purchaser under the decree or by any other party interested therein (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein."

Clearly a motion in the original suit could not properly perform the function of such supplemental bill and in a matter of such vital importance, where the issues are involved and the facts in dispute, such laxity in pleading should not be indulged and the motion should not be treated as a supplemental bill.

It is our opinion that the only power possessed by the United States District Court for the Northern District of Oklahoma over the decree of April 29, 1927, affirmed by the Circuit Court of Appeals for the Eighth Circuit, is the power to enforce its execution and it should exercise such power unless the Continental Company, within a reasonable time hereafter, obtains leave from such United States District Court to file a supplemental bill setting up facts which, in the judgment of such court, entitles the Continental Company to be relieved from the duty enjoined on it by the decree of April 29, 1927, to purchase a one-half interest in the lease. In which event, issues should be made up and that cause regularly heard and disposed of.

The decree entered June 24th, 1929, should be set aside and annulled.

The honorable District Judge, in his return to each of the alternative writs, has signified his intention and willingness to proceed in these matters in accordance with the directions of this court. For this reason, no further orders will be entered herein, unless the necessity therefor shall be made to appear, but jurisdiction of these causes will be retained to enter any further and additional orders which we may deem necessary.